

**U.S. Department of Justice**
Civil Division
Federal Programs Branch

| **Mailing Address** | **Overnight Delivery Address** |
|---|---|
| P.O. Box 883 | 20 Massachusetts Ave., N.W. |
| Washington, D.C. 20044 | Washington, D.C. 20001 |

Nicholas Cartier  Tel: (202) 616-8351
Trial Attorney  nicholas.cartier@usdoj.gov

**By ECF**  May 24, 2017

The Honorable Roanne L. Mann
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>*Laventure et al. v. United Nations et al.*</u>, CV-14-1611 (Townes, J.) (Mann, C.M.J.)

Dear Judge Mann:

      On April 7, 2017, this Court invited the Government to file a letter "expressing the view of the United States concerning plaintiffs' request" to amend their complaint and to move for default judgment. ECF No. 15. Pursuant to 28 U.S.C. § 517,[1] the United States files this Statement of Interest, explaining that the United Nations is absolutely immune from suit and service of process under the Convention on Privileges and Immunities of the United Nations ("General Convention"). In light of the UN's immunity, the Court lacks subject matter jurisdiction over the UN. *See Georges v. United Nations*, 834 F.3d 88, 98 (2d Cir. 2016). Similarly, the individual UN defendants enjoy immunity for their official actions, and two of the individual defendants, by virtue of their high-ranking positions, also enjoy diplomatic immunity.

## BACKGROUND

### I.    PLAINTIFFS' COMPLAINT

      Plaintiffs allege that the United Nations ("UN"), the United Nations Stabilization Mission in Haiti ("MINUSTAH") and certain UN officials are responsible for an epidemic of cholera that broke out in Haiti in 2010, killing approximately 9,000 Haitians and injuring approximately 700,000 more. First Amended Complaint (FAC) ¶ 1. ECF No. 5. Specifically, they allege the UN negligently caused the cholera epidemic by failing to screen Nepalese peacekeeping forces who were deployed to Haiti in October 2010, despite a known outbreak of cholera in Nepal, *id.*

---
[1] 28 U.S.C. § 517 provides that the "Solicitor General, or any other office of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States."

¶¶ 1, 5, 75-89, and by failing to use adequate sanitation for the peacekeepers, which allegedly led to the contamination of a major Haitian water supply. *Id*. ¶¶ 3-5, 90-104.

Plaintiffs also allege that the UN failed to establish a claims commission to address third-party claims of individuals injured by the cholera epidemic, purportedly in violation of the Agreement Between the United Nations and the Government of Haiti Concerning the Status of the United Nations Operation in Haiti ("Status of Forces Agreement" or "SOFA"). *Id*. ¶¶ 7, 17, 27, 189-91. Plaintiffs allege they made claims for compensation and remediation to the UN and that the UN "refused to substantively respond to the claims." *Id*. ¶¶ 193-94. Plaintiffs also allege that the General Convention requires the UN to provide for appropriate modes of settlement for third-party private law claims, including those arising from the cholera epidemic in Haiti. *Id*. ¶¶ 16, 192. *See* General Convention, *adopted* Feb. 13, 1946, 21 U.S.T. 1418, 1 U.N.T.S. 16, § 29. Plaintiffs allege that, despite this obligation, the UN has not provided plaintiffs with any relief. FAC ¶ 192.

The Laventures (Marie, Maggie, Sane, and Carmen) are Haitian or U.S. citizens who allege that their parents died in the cholera epidemic, and bring suit on behalf of themselves and the estates of their parents. *Id*. ¶¶ 20-24. In addition, there are 2641 named plaintiffs on Exhibit 1 to the First Amended Complaint who are allegedly either individuals who were infected by the epidemic or, if deceased, representatives of estates of individuals who died in the epidemic. *Id*. ¶ 26 & Exhibit 1. Plaintiffs also bring suit on behalf of a putative class of similarly situated individuals and seek compensatory and punitive damages in an amount to be determined at trial. *Id*. ¶ 44.

In addition to the UN and MINUSTAH, which is a subsidiary organ of the UN and thus part of the UN, plaintiffs also named six individual defendants: (i) former UN Secretary-General Ban-Ki Moon, who as the former chief administrative officer of the UN is alleged to have had overall responsibility for the management of the UN and its operations; (ii) Assistant Secretary-General Edmond Mulet, the former Special Representative of the Secretary-General and Head of MINUSTAH from March 2010 to May 2011, who is alleged to have had overall authority for the UN's conduct in Haiti during that period; (iii) Chandra Srivastava, former Chief Engineer for MINUSTAH, who is alleged to have been responsible for the environmental and sanitation units in Haiti during October 2010; (iv) Paul Aghadjanian, former Chief of Mission Support for MINUSTAH, who is alleged to have been responsible for managerial, logistical, and administrative support in Haiti during 2010; (v) Pedro Medrano, former Assistant Secretary-General and UN Senior Coordinator for the Cholera Response to Haiti, who was alleged at the time the First Amended Complaint was filed to have been responsible for coordinating the UN's cholera response in Haiti; and (vi) Miguel de Serpa Soares, current Under-Secretary-General for Legal Affairs, who is alleged to be responsible for all legal issues arising from the UN's cholera response. *Id*. ¶¶ 29-36. *See also* Letter from Stephen Mathias, Assistant Secretary-General for Legal Affairs to the Permanent Representative of the United States Mission to the United Nations (May 2, 2017 Letter) (attached hereto as Exhibit A).

2

## II.     PROCEDURAL HISTORY

In response to plaintiffs' request, this Court stayed the case in March 2015 to await the Second Circuit's decision in *Georges v. United Nations,* which involved a similar suit brought against the UN (including MINUSTAH), former Secretary-General Ban, and Assistant Secretary-General Mulet by victims of the Haitian cholera outbreak. ECF No. 8. In August 2016, the *Georges* panel affirmed the district court's ruling that the defendants were immune from suit under the General Convention. *Georges*, 834 F.3d 88, 98 & n.64 (2d Cir. 2016). The plaintiffs did not inform the Court of the Second Circuit's decision. As a result, on March 30, 2017, this Court issued an order to the plaintiffs to show cause why their suit should not be dismissed for lack of jurisdiction in light of the *Georges* immunity decision or, in the alternative, for failure to prosecute. ECF No. 13.

In response, plaintiffs argued that in *Georges* the Second Circuit upheld the UN's immunity on the "narrow" ground that the UN's obligation to provide for appropriate modes of settlement for third-party private law claims under Section 29 of the General Convention is not a condition precedent to the UN having immunity against such claims. Plaintiffs' Response to Order to Show Cause (Plaintiffs' Response) at 2. ECF No. 14. According to plaintiffs, the Second Circuit's holding does not render their case "moot," because plaintiffs (unlike the plaintiffs in *Georges*) take the position that the UN is not immune because it purportedly "has repeatedly and expressly waived sovereign immunity on multiple occasions . . . ." *Id*. at 8. Plaintiffs seek permission to file a new amended complaint adding additional plaintiffs, and they also intend to move for a default judgment.

After this Court invited the Government to file a letter expressing its views on plaintiffs' motion to amend their complaint to add additional plaintiffs and to move for default judgment, on April 20, 2017, the Department of Justice filed a Notice of Potential Participation indicating that it would decide whether to file a Statement of Interest by May 24, 2017, and if so would file the statement no later than that date as well. ECF No. 16.

The UN has requested that the United States inform the Court of the UN's immunity and that of its named officials from this suit. *See* May 2, 2017 Letter. Exhibit A.

## DISCUSSION

## I.     THE ABSOLUTE IMMUNITY OF THE UN

### A.     UN's Immunity

Absent an express waiver, the UN is absolutely immune from suit and all legal process. The UN Charter provides that the UN "shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfillment of its purposes." The Charter of the United Nations, June 26, 1945, 59 Stat. 1031, art 105.1. The General Convention, adopted Feb. 13, 1946, 21 U.S.T. 1418, 1 U.N.T.S. 16, defines the UN's privileges and immunities by

3

providing that "[t]he United Nations, its property and assets wherever located and by whomsoever held, <u>shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity</u>." General Convention, art. II, sec. 2 (emphasis added).

The United States understands the General Convention to mean what it unambiguously says: the UN enjoys absolute immunity from "every form of legal process," including suit and service of process, unless the UN has "expressly waived" its immunity in a "particular case." Courts routinely recognize the UN's absolute immunity from suit absent an express waiver on the part of the UN. "Under the [General] Convention the United Nations' immunity is absolute, subject only to the organization's express waiver thereof in particular cases." *Boimah v. United Nations General Assembly*, 664 F. Supp. 69, 71 (E.D.N.Y.1987) (Nickerson, J.). "[W]here, as here, the United Nations has not waived its immunity, the General Convention mandates dismissal of Plaintiffs' claims against the United Nations for lack of subject matter jurisdiction." *Brzak v. United Nations*, 551 F. Supp. 2d 313, 318 (S.D.N.Y. 2008), aff'd, 597 F.3d 107, 112 (2d Cir. 2010). In addition, the UN enjoys immunity from suit under the International Organizations Immunity Act ("IOIA"), 22 U.S.C. § 288a(b). *Brzak*, 597 F.3d at 112.

The UN's immunity under the General Convention extends to MINUSTAH, which is a UN peacekeeping mission that reports directly to the Secretary-General and the Security Council, and is therefore an integral part of the UN. In addition, the Status of Forces Agreement between the UN and Haiti explicitly provides that MINUSTAH "shall enjoy the privileges and immunities . . . provided for in the [UN General] Convention." Status of Forces Agreement, art. III, § 3. Accordingly, MINUSTAH is entitled to the same immunities established by the General Convention. *See, e.g., Emmanuel v. United States*, 253 F.3d 755, 756 (1st Cir. 2001) (noting that immunity applies to the UN Mission in Haiti pursuant to the Status of Forces Agreement); *see also Sadikoglu v. UN Development Programme*, No. 11-Civ-0294 (PKC), 2011 WL 4953994 at * 3 (S.D.N.Y. Oct. 14, 2011) (ruling that "because UNDP — as a subsidiary program of the UN that reports directly to the General Assembly — has not waived its immunity," the General Convention "mandates dismissal . . . for lack of subject matter jurisdiction").

### B. Contrary To Plaintiffs' Allegations, The UN Has Not Waived Its Immunity

Plaintiffs mistakenly assert that the UN "has repeatedly and expressly waived sovereign immunity on multiple occasions." Plaintiffs' Response at 8. To the contrary, the UN has asserted its own and its officials' right to immunity. The attached May 2, 2017 letter from the UN expressly requests that "the competent United States authorities [ ] take appropriate action to ensure full respect for the privileges and immunities of the United Nations and its officials. . . ." *See* May 2, 2017 Letter at 2. Exhibit A.

Although plaintiffs allege that the UN's failure to establish a claims commission constitutes a "violation" of the SOFA, FAC ¶ 191, and further allege that the UN committed a "violation" of the General Convention by failing to provide a mode of settlement for cholera-based claims, *id.* ¶ 192, this does not constitute a waiver of the UN's immunity, which, as noted, must be "expressly waived" by the organization in a "particular case." General Convention, art.

II, § 2.  As the Second Circuit explained in *Brzak*, "[a]lthough the plaintiffs argue that purported inadequacies with the United Nations' internal dispute resolution mechanism indicate a waiver of immunity, crediting this argument would read the word 'expressly' out of the [General Convention]."  *Brzak*, 597 F.3d at 112

Moreover, the plaintiffs in *Georges* also argued that the UN lacked immunity because it had failed to provide a remedy for their cholera-related claims.  *See, e.g.*, Reply Brief for Appellants at 3-19.  2015 WL 5693482.  The Second Circuit rejected this argument, however, noting that its conclusion was consistent with its decision in *Brzak*, "in which we held that the purported inadequacies of the UN's dispute resolution mechanism did not result in a waiver of absolute immunity from suit."  *Georges*, 834 F.3d at 97 n.48 (citing *Brzak*, 597 F.3d at 112).  Clearly, then, whether the UN has established a claims commission or other means by which aggrieved persons can seek compensation is irrelevant to the question of waiver.[2]

Plaintiffs also allege that the UN waived its immunity based on 1996 and 1997 reports from the Secretary General that state that the UN is liable for damages to innocent third parties, as well as a 1998 General Assembly resolution that the UN would agree to liability for third-party claims resulting from the activities of peacekeeping operations.  Plaintiffs' Response at 8-9.  According to plaintiffs, in light of these reports and the UN General Assembly resolution, the SOFA "permitted entry of U.N. troops only on condition of paying for injuries they caused."  *Id.* at 9.  These various actions by the Secretary General and General Assembly do not constitute an express waiver by the UN of its immunity from legal process in United States courts in this case.  *See* General Convention § 2 (the UN is immune unless "in any particular case" it expressly waives its immunity).  Instead, the UN actions referred to by plaintiffs appear, at most, to express a general commitment to provide for compensation for injury to innocent third parties during the course of peacekeeping operations, which is what the SOFA itself states.

Because the UN has not expressly waived its or its component's immunity in this case, the UN and MINUSTAH are entitled to immunity from legal process and suit.

## II. THE IMMUNITY OF THE INDIVIDUAL DEFENDANTS

The UN has also asserted the immunity of the individual defendants in this case.  *See* May 2, 2017 Letter at 2.  Exhibit A.  As the United States explains below, pursuant to the General Convention, current and former U.N. officials named as defendants enjoy immunity for any past official acts.  In addition, current Under-Secretary-General Soares and Assistant Secretary-General Mulet, by virtue of their high-ranking positions, enjoy diplomatic immunity from suit pursuant to the Vienna Convention on Diplomatic Relations ("Vienna Convention"), 23 U.S.T. 3227, TIAS No. 7502, 500 UNTS 95.

---

[2] In *Georges*, the Second Circuit further held that plaintiffs lacked standing to argue that the UN had committed a material breach of the General Convention by not establishing a mode of settlement for cholera-based claims because, unless a sovereign objects, an individual cannot raise a violation of international law as an issue.  *See* 834 F.3d at 97 & n.51 (citing *United States v. Garavito–Garcia*, 827 F.3d 242, 246-47 (2d Cir. 2016); *United States v. Emuegbunam*, 268 F.3d 377, 390 (6th Cir. 2001)).

5

***Official Acts Immunity***.  The UN Charter provides that "officials of the Organization shall . . . enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connexion [sic] of the organization."  UN Charter, art. 105, § 2.  Article V, Section 18(a) of the General Convention provides that UN officials are "exempt from legal process in respect of words spoken or written and all acts performed by them in their official capacity . . . ."  Under section 18(a), both current and former UN officials, regardless of rank, enjoy immunity from suit for all acts performed in their official capacity.  *See Van Aggelen v. United Nations*, 311 F. App'x 407, 409 (2d Cir. Feb. 20, 2009) (applying such immunity to a UN official who did not enjoy diplomatic immunity).  Likewise, former as well as current UN officials enjoy immunity for their official acts under the IOIA, 22 U.S.C. § 288d(b).  *De Luca v. UN*, 841 F. Supp. 531, 534 (S.D.N.Y.), *aff'd*, 41 F.3d 1502 (2d Cir. 1994).  Consequently, all the individual defendants enjoy immunity for their official acts under Section 18(a) of the General Convention and the IOIA.[3]

***Diplomatic Immunity***.  In addition to immunity for their official acts, current Under Secretary-General Soares and Assistant Secretary-General Mulet enjoy diplomatic immunity as well.  Article V, Section 19 of the General Convention provides that, in addition to the immunities specified in Section 18, "the Secretary-General and all Assistant Secretaries-General shall be accorded . . . the privileges and immunities . . . accorded to diplomatic envoys, in accordance with international law."  *Id.*, art. V, § 19.  In the United States, the privileges and immunities enjoyed by diplomats are governed by the Vienna Convention, which entered into force with respect to the United States in 1972.  23 U.S.T. 3227, TIAS No. 7502, 500 U.N.T.S. 95.  Article 31 of the Vienna Convention provides that diplomatic agents "enjoy immunity from the civil and administrative jurisdiction" of the receiving State — here, the United States — except with respect to: (a) privately-owned real estate; (b) performance in a private capacity as an executor, administrator, heir, or legatee; and (c) professional or commercial activities other than official functions.  None of these exceptions are at issue here.  Accordingly, they enjoy immunity from this suit.  *See Georges*, 848 F.3d at 92, 98 n.64 (affirming dismissal of Ban and Mulet on the grounds of diplomatic immunity).[4]

## III.   PLAINTIFFS HAVE NOT ADEQUATELY SERVED THE DEFENDANTS

Plaintiffs do not appear to have adequately served any of the defendants.  The UN's May 2017 letter states that, notwithstanding attempts by the plaintiffs to serve it by facsimile, the UN has not waived its immunity as to service.  May 2, 2017 Letter at 3.  Exhibit A.  As noted, the

---

[3] Section 17 of the General Convention provides that the Secretary-General will specify the categories of officials to whom the provisions of Article V of the General Convention apply.  In 1946, the General Assembly approved the Secretary-General's proposal to apply the privileges and immunities of Article V of the General Convention to "all members of the staff of the United Nations, with the exception of those who are recruited locally and are assigned to hourly rates."  G.A. Res. 76 (I), U.N. Doc. A/RES/76(I) (Dec. 7, 1946).

[4] In this case, Ban no longer enjoys diplomatic immunity because his term as Secretary General has ended, but he continues to enjoy immunity for his official acts under Section 18(a) of the General Convention and under the IOIA, as well as due to his status as a former Secretary-General.  *See Brzak*, 597 F.3d at 113 (individuals who formerly held the rank of UN Assistant Secretary-General or higher continue to enjoy immunity for their official acts as a matter of residual diplomatic immunity).

UN, in the absence of a waiver, enjoys immunity from "every form of legal process[,]" General Convention § 2, which includes service of process in a civil suit. The UN's letter further points out that although the UN Headquarters Agreement provides for the Secretary-General to provide for conditions of service within the Headquarters District, the Secretary-General has not, in fact, done so. UN's May 2, 2017 Letter at 3-4. Exhibit A. As a result, any attempts by plaintiffs to serve the UN and the individual defendants within the Headquarters District would be ineffectual.

The docket in this case indicates that plaintiffs attempted to serve all of the defendants by personal service on Ban in June 2014. However, former Secretary-General Ban enjoyed diplomatic immunity as of 2014, and therefore enjoyed personal inviolability, which rendered service on him ineffective. *See Tachiona v. Mugabe*, 386 F.3d. 205, 223 (2d Cir. 2004) (unless one of the three exceptions to immunity from civil suit apply, service of process on an individual enjoying diplomatic immunity is improper). Furthermore, an individual who enjoys inviolability cannot be served even as a means of serving parties who do not enjoy immunity. *See id*. at 224 (dismissing non-immune entity whom plaintiffs attempted to serve through inviolable individuals). Accordingly, to the Government's knowledge, there has not been effective service on any of the defendants in this case.

## IV. PLAINTIFFS' REQUEST FOR PERMISSION TO FILE FOR DEFAULT AND AMEND THEIR COMPLAINT WOULD BE FUTILE

Plaintiffs seek the Court's permission to file a motion for default judgment to test the sufficiency of the defendants' claim of immunity. Response at 7. For the reasons set forth above, the UN is absolutely immune, all of the individual defendants enjoy immunity for their official acts, and Under Secretary-General Soares and Assistant Secretary-General Mulet enjoy diplomatic immunity as well. Accordingly, a motion for default would appear to be futile.

Plaintiffs also seek leave to file a second amended complaint to add additional plaintiffs and to reconcile the complaint with purported recent admissions by the UN regarding its responsibility. Again, plaintiffs' proposed amendments to the complaint would have no impact on the UN's and the individual defendants' immunity and thus appear to be futile.

We appreciate the Court's attention to this matter.

Respectfully submitted,

/s/
Nicholas Cartier
Trial Attorney, DOJ Civil Division, Federal Programs Branch
20 Mass. Ave, N.W., Washington, D.C. 20001
(202) 616-8351
*Attorney for United States*

Encl.

cc: All Counsel of Record (<u>by ECF</u>)