

**U.S. Department of Justice**
Civil Division
Federal Programs Branch

| **Mailing Address** | **Overnight Delivery Address** |
|---|---|
| P.O. Box 883 | 20 Massachusetts Ave., N.W. |
| Washington, D.C. 20044 | Washington, D.C. 20001 |

Nicholas Cartier                               Tel: (202) 616-8351
Trial Attorney                                    nicholas.cartier@usdoj.gov

**By ECF**                                                    July 7, 2017

The Honorable Roanne L. Mann
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:     *Laventure et al. v. United Nations et al.*, CV-14-1611 (Townes, J.) (Mann, C.M.J.)

Dear Judge Mann:

       The United States of America respectfully submits this letter in further support of its Statement of Interest, dated May 24, 2017, concerning the defendants' immunity from legal process and suit. The United States makes this submission pursuant to 28 U.S.C. § 517, consistent with this Court's Order of June 12, 2017 (ECF No. 19), and in furtherance of the United States' obligations as host nation to the United Nations and as a party to treaties governing the privileges and immunities of the UN.[1]

       At issue is whether the UN and the six UN officials named as defendants are immune from suit in this case. If they are immune, they are not subject to the court's jurisdiction. The Convention on the Privileges and Immunities of the United Nations ("UN General Convention") provides that the "United Nations . . . shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity." UN General Convention art. II, § 2. *See Brzak v. United Nations*, 597 F.3d 107, 112 (2d Cir. 2010) (noting that, under the General Convention, the UN "enjoys absolute immunity from suit unless 'it has expressly waived its immunity.'"); *see also* the International Organizations Immunity Act ("IOIA"), 22 U.S.C. § 288a(b). Here, the UN has not waived its immunity; to the contrary, by way of its May 2, 2017 letter, the UN has expressly asserted its immunity, and that of its officials, from plaintiffs' lawsuit. *See* United States' Statement of Interest ("SOI") (ECF No. 17) at 4; UN's May 2, 2017 Letter (Exhibit A to SOI). As courts have consistently found, the UN's retention of its immunity with respect to a particular lawsuit requires its dismissal. *See, e.g., Brzak v. United Nations*, 551 F. Supp. 2d 313, 318 (S.D.N.Y. 2008), aff'd, 597 F.3d 107, 112 (2d

---

[1] The United States incorporates by reference the abbreviations and defined terms from its May 24, 2017 Statement of Interest.

Cir. 2010) ("[W]here, as here, the United Nations has not waived its immunity, the General Convention mandates dismissal of Plaintiffs' claims against the United Nations for lack of subject matter jurisdiction."); *accord Georges v. United Nations*, 834 F.3d 88 (2d Cir. 2016).

Plaintiffs do not dispute that only an express waiver by the UN of its immunity can be effective. Rather, plaintiffs contend that the General Convention's requirement that waiver be express "in any particular case" does not actually require that the UN waive its immunity in connection with this specific case, provided it has issued an *a priori* waiver covering the circumstances of this suit. Mem. of Law in Opp. to the Gov't Statement of Interest ("Pl. Opp.") (ECF No. 21) at 6-8. Plaintiffs provide no citation to a case in which any court has found that the UN has submitted itself to the court's jurisdiction in a tort case under any circumstances, let alone via an advance waiver of immunity. Plaintiffs, therefore, fail to provide any support for this Court to find that the General Convention's express waiver provision includes instances where the UN somehow issues a waiver of some yet unknown future case or claim. On the contrary, courts have consistently found the UN to have retained its immunity from tort claims. *E.g.*, *Georges*, 834 F.3d at 98; *Brzak*, 597 F.3d at 112; *Bisson v. United Nations*, 2008 WL 375094 (S.D.N.Y. 2008). *See also Emmanuel v. United States*, 253 F.3d 755, 757 (1st Cir. 2001) (discussing the UN's absolute immunity to claims for torts allegedly committed in Haiti).

The Court need not reach the issue of whether the UN could validly issue an advance waiver of its immunity to tort claims, however, because plaintiffs have failed to cite any evidence that would come close to constituting an advance waiver that would satisfy the General Convention's requirement that the UN waive its immunity with respect to a particular case. *See* UN General Convention art. II, § 2. Instead, plaintiffs rely chiefly on two reports of the Secretary-General from the 1990s that expressly state that the UN is <u>immune</u> from suit in domestic courts, and a General Assembly resolution adopting the reports. Pl. Opp. at 9-12.

Report 389, dated September 20, 1996, sought to address "the scope of United Nations liability for activities of United Nations forces, procedures for the handling of third-party claims and limitations of liability." A/51/389 at 1. Pl. Opp., Exhibit B. The report stated that "the United Nations has, since the inception of peacekeeping operations, assumed its liability for damage caused by members of its forces in performance of their duties." A/51/389 at 4 ¶ 7. The UN, however, did not state or intend that such claims be resolved in domestic courts. Instead, the UN intended to resolve such claims by means of a UN-created standing claims commission that would settle claims "resulting from damage caused by members of the [UN] force in the performance of their official duties and *which for reasons of immunity of the Organization and its Members could not have been submitted to local courts.*" *Id.* (emphasis added). In other words, the rationale for a standing claims commission was precisely because the UN retained its immunity from suit in domestic courts. This report, which predates the events in this case by approximately 14 years, does not remotely satisfy the General Convention's requirement for an express waiver.

The other Secretary-General report relied upon by plaintiffs, dated May 21, 1997, analyzes "the provisions of article 51 of the model status-of-forces agreement, elaborates criteria

2

and guidelines for implementing the principles of financial and temporal limitations on the liability of the United Nations and proposes modalities for establishing these limitations in a legally binding instrument." A/51/903 at 1. Opp., Exhibit C. Like the previous report, it expressly recognized that the UN is immune from suit in domestic courts. Again, this immunity was cited as the rationale for proposing to establish a standing-claims commission, which would serve "as a mechanism for the settlement of disputes of a private law character to which the United Nations peacekeeping operation or any member thereof is a party and *over which the local courts have no jurisdiction because of the immunity of the Organization or its members*." A/51/903 at 4 ¶ 7 (emphasis added).

Both reports, and the 1998 General Assembly resolution (52/247) adopting them, Opp., Exhibit D, are consistent with the Agreement Between the United Nations and the Government of Haiti Concerning the Status of the United Nations Operation in Haiti ("MINUSTAH SOFA"), which provides both that the MINUSTAH (a component of the UN) will enjoy immunity under the General Convention (SOFA ¶ 15) and that tort claims can be brought before a standing claims commission (¶ 55). In short, none of the documents plaintiffs rely on constitute an expression that the UN would submit itself to the jurisdiction of the courts, as opposed to making voluntary payments or payments directed by standing commissions. Read as a whole, the documents cited by plaintiffs express an intention by the UN to resolve its liability for torts in fora other than courts.[2]

While no standing-claims commission was established in Haiti, the Second Circuit in *Georges* held that the UN's obligation to provide for an alternate forum for dispute resolution was not a condition precedent to its immunity from suit, 834 F.3d at 97, and plaintiffs foreswear any intent to argue otherwise here. Pl. Opp. at 13.

In short, plaintiffs have failed to allege any plausible evidence that the UN has expressly waived its immunity from suit in this case. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."). Instead, to the contrary, plaintiffs have provided evidence that the UN has always intended to retain its immunity in connection with torts arising out of its peacekeeping operations, and the UN has expressly asserted its immunity here via its May 2, 2017 letter. *See* SOI at 4. Under the facts presented, plaintiffs have not met their burden of establishing the Court's jurisdiction.

---

[2] The plaintiffs also cite (Pl. Opp. at 10 n. 18) a 1965 letter from the Secretary General, S/6597, which discusses the "policy" of the UN "to compensate individuals who have suffered damages for which the Organization was legally liable[,]" a policy viewed as consistent with the General Convention. S/6597 at 1. Attached hereto as Exhibit A. In that circumstance, consistent with the policy, the UN agreed voluntarily to provide a lump-sum payment to the Belgian government. *Id.* at 2. There is no mention of submission to the jurisdiction of the Belgian (or other) courts, and indeed, the Secretary-General's letter dated February 20, 1965 expressly states that the Secretary-General decided to pay the settlement "without prejudice to the privileges and immunities enjoyed by the United Nations." *Id.*, Annex 1, at 1. U.

3

With respect to the individual defendants, plaintiffs fail to advance any argument that Under-Secretary-General Serpa Soares and Assistant Secretary-General Mulet do not enjoy diplomatic immunity, or that the six individual defendants do not enjoy immunity for their official acts. Nor do they argue that the acts for which the individual defendants have been sued are not official acts. The closest plaintiffs come to a waiver argument with respect to the individual defendants is their statement that UN General Assembly resolution 52/247, which addresses tort claims against the UN, is "binding on the UN and its officials." Opp. at 12. There are at least two clear defects with such a waiver argument. First, UNGA resolution 52/247 says nothing whatsoever about claims against, or the responsibility of, UN officials; it only addresses the "liability" of the UN itself. Second, only the Secretary-General—not the General Assembly— has the authority to waive the immunity of UN officials. General Convention art. III, § 20. No such waiver has occurred. Accordingly, even if plaintiffs are attempting to make a waiver argument with respect to the individual defendants, it is unavailing. They too are immune under the General Convention and the IOIA.

With respect to service of the summons and complaint, plaintiffs argue that their attempts at service via facsimile on the UN and personally on then-Secretary-General Ban should be deemed sufficient. Pl. Opp. at 17-19. But plaintiffs' alleged compliance with the requirements of due diligence and due process under U.S. domestic law do not meet the United States' international obligations. In particular, plaintiffs' asserted attempt to serve the UN by fax, *see* Pl. Opp. at 18, is ineffectual given the inviolability of the UN headquarters district and the requirement that the Secretary-General must consent to the conditions under which any service of process might be permitted in the headquarters district. Agreement Between the United Nations and the United States Regarding the Headquarters of the United Nations, June 26, 1947, 61 Stat. 3416, 11 U.N.T.S. 11 (entered into force Oct. 21, 1947), art. III, § 9(a); *see also* SOI at 7. The Secretary-General has not established any such conditions. Exhibit A to the SOI at 3-4.

As to service on then-Secretary-General Ban, plaintiffs attempt to distinguish *Tachiona v. Mugabe*, 386 F.3d. 205, 223 (2d Cir. 2004), on the ground that there was no waiver of immunity in that case, as there purportedly was in this. Pl. Opp. at 19. For the reasons set forth above, plaintiffs' waiver argument—that the UN's general commitment to be liable for tort claims before UN-created standing claims commissions arising out of peacekeeping operations is tantamount to an express waiver of immunity from suit here—should not persuade the court. But in any event, a statement in the 1990s regarding the UN's potential liability for a class of tort claims did not waive a future Secretary-General's personal inviolability with respect to acceptance of service of process in this suit. *Tachiona* governs the attempt to serve Ban: service was ineffective both as to him and as to the other defendants, including the UN.

Plaintiffs' motion to file a second amended complaint in no way addresses the immunity of the UN or that of the individual defendants in this case. Accordingly, such amendment would appear to be futile.

We appreciate the Court's attention to this matter.

4

Respectfully submitted,

_____/s/_____
Nicholas Cartier
Trial Attorney, DOJ Civil Division, Federal Programs Branch
20 Mass. Ave, N.W., Washington, D.C. 20001
(202) 616-8351
*Attorney for United States*

Encl.
cc:     All Counsel of Record (<u>by ECF</u>)